FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JAN 0 9 2007 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 96-CR-793(JBW) |
| ) | |
| v. ) | AMENDED |
| ) | MEMORANDUM AND ORDER |
| ROBERT SCOTT BRENNAN, ) | FEDERAL PRISON vs. |
| ) | STATE DRUG COURTS |
| Defendant. ) | |

JACK B. WEINSTEIN, Senior District Judge:

**Table of Contents**

I. Introduction

II. Facts

    A. Procedural History

    B. Defendant's Personal Background

III. Law

    A. Federal

    B. State

        1. Criminal Sanctions for Drug Possession

        2. Drug Court System

IV. Contrast between the Federal and the New York State Systems

V. Appropriate Disposition: Deferring to the State

VI. Conclusion

1



I.  **Introduction**

This case illustrates the need to coordinate federal and state sentencing practices. For reasons indicated below, the court defers to the state in this drug possession case.

Based on incidents involving possession of heroin by the defendant that occurred on November 18, 2005 and September 14, 2006, defendant's arrest and prosecution by the State of New York, and charges of violations of federal supervised release, the government seeks a revocation of defendant's term of federal supervised release and the imposition of a new term of federal imprisonment. The government relies upon 18 U.S.C. § 3583(g) which requires revocation of supervised release and a mandatory term of imprisonment of one year or more if the defendant - releasee is found by the court to have been in possession of a controlled substance.

Utilization of the state drug courts to assist the defendant appears to be preferable to a federal prison sentence. Accordingly, for the reasons set out below, the violation of supervised release charge is adjourned for one year. Arguably this order is contrary to the terms of section 3583(g) before amendment as interpreted by the Court of Appeals for the Second Circuit, requiring a term of imprisonment of at least one year. As now amended, section 3583(g) would not mandate a prison term. This order accords with federal policy as reflected in 28 U.S.C. § 3583 (a)(6)- discouraging disparate sentences.

II. **Facts**

A.  **Procedural History**

The defendant, a drug addict, was convicted of conspiracy to commit murder, in violation of 18 U.S.C. § 1959 (a) (5). In July 1997 he was sentenced to 84 months' imprisonment and three

years of supervised release. His period of supervised release began on August 22, 2003.

On February 10, 2004, the Probation Department on a visit to defendant's residence recovered a bag of marijuana. It filed a violation of supervised release report on a variety of charges. Defendant pled guilty only to the charge of failing to obtain employment and the court restored supervision.

On November 18, 2005, the defendant was arrested by the New York City Police Department and charged with possession of an unspecified amount of heroin. Based on this arrest, the Probation Department filed a second violation of supervised release report on June 21, 2006. The parties appeared on September 11, 2006 and the matter was adjourned to allow time for the defendant to resolve pending state criminal charges for the heroin offense. The matter is still pending in New York City Criminal Court.

On September 14, 2006, three days after appearing before this court on the first state heroin charge, the defendant was again arrested by the New York City Police Department and charged for the second time with possession of an unspecified amount of heroin. This matter is also pending in the New York City Criminal Court.

Defendant was arrested by federal marshals on order of this court to face violations of supervised release based on the heroin charges. His counsel informed this court that the state criminal charges from the November 18, 2005 and the September 14, 2006 arrests are expected to be disposed of in the state courts without criminal pleas or incarceration. The defendant is expected to receive treatment for his drug addiction (Tr. of Hr'g. on November 13, 2006, 13).

### B.    Defendant's Personal Background

The defendant has been married for 23 years. *Id. at 8*. While he and his wife do not reside

together, they have a friendly relationship. *Id.* Defendant and his wife have had two children together. He maintains a close relationship with both children. *Id.* The family's integrity has already been burdened by a lengthy period of federal incarceration. It took the defendant and his children eight months after his release from federal prison to resume their preincarceration emotional affinity. *Id* at 14. To impose a further federal term of prison would destroy whatever bonds the defendant has managed to form with his family since his release from prison. He has a valuable active union card for the District Council of Carpenters and is willing and able to obtain gainful employment. *Id* at 3. His continued employment would avoid burdening welfare with the family's support.

### III. Law

#### A. Federal

Penalties for violations of supervised release are viewed as part of the punishment for the original offense. *Johnson v. United States,* 529 U.S. 694, 701 (2000). The court assumes, for the purposes of this memorandum, that, pursuant to Second Circuit rulings governing penalties for supervised release violations, the law that was in effect at the time the original offense was committed is operative. *Id.* at 702; *United States v. Wirth,* 250 F.3d 165, 170 (2d Cir. 2001).

In 1991, at the time the defendant committed the offense that gave rise to the term of supervised release, 18 U.S.C. § 3583 (g) provided: "[i]f the defendant is found by the court to be in the possession of a controlled substance, the court *shall* terminate the term of supervised and *require the defendant serve in prison not less than one-third of the term of supervised release,*" in the instant case one year. (Emphasis added). Under section 3583 (g) as amended in 1994 the court now has the power to impose a term with no minimum. *See* 18 U.S.C. § 3583 (g), *amended*

*by* Pub.L.No. 103-322, § 110505(3) (1994).

Under the law applicable to this defendant under *Johnson* and *Wirth,* a term of imprisonment of one year must be imposed if the defendant is found to have been in possession of a controlled substance while on supervised release. *See United States v. Wirth*, 250 F.3d at 169.

### B. State

#### 1. Criminal Sanctions for Drug Possession

As noted, the defendant was charged in state court with possession of heroin, a controlled substance, in New York City Criminal Court on November 18, 2005 and again on September 14, 2006. N.Y. P. L. § 220.00; N.Y. P. H. L. § 3306, schedule I (c) (11). It is likely that the amount possessed by defendant was small and for his own use.

Pursuant to N. Y. P. L. §§ 220.03-220.21 possession of a controlled substance can lead to a wide variation in the severity of the sanction imposed. Possession of a controlled substance can be classified as a Class A misdemeanor, at the lowest level, and as Class A-I felony, at the highest level. Possession of a controlled substance in an amount of less than one - eighth of an ounce is classified as a Class A misdemeanor, punishable by a sentence of no more than one year of incarceration. Possession of a controlled substance in an amount of four ounces or more is classified as a Class A-1 felony, punishable by a term of incarceration of no less than eight years and no more than twenty years. Given current practice in the state system, the prosecution will probably charge a Class A misdemeanor.

#### 2. Drug Court System

In addition to the traditional criminal justice system designed to punish offenses

committed by individuals with drug addictions. New York State has specialized court parts with support services intended for the diversion of offenders with drug addictions from incarceration. Both misdemeanor and felony offenders can be referred to these specialized court parts. *See generally* N.Y.P.L §§ 170.15 & 180.20.

New York State experimented with its first drug court in 1995. Since then, New York Chief Judge Kaye has supported the drug court approach. *See*, Judith S. Kaye, State of the Judiciary 2006 (2006), available at http://nycourts.gov/admin/stateofjudiciary/soj2006.pdf. Chief Judge Kaye noted that a new approach for treating offenders with drug addiction problems outside of prison was necessary because "in many of today's cases, the traditional approach yields unsatisfying results." Judith S. Kaye, *Making the Case for Hands-On Courts*, Newsweek, Oct. 11, 1999, at 13.

The techniques being used in drug courts differ in a number of ways from the traditional incarcerative techniques utilized in most criminal cases. As Chief Judge Kaye noted:

> [f]irst is the court's belief that we can and should play a role in trying to solve the problems that are fueling our caseloads. Second is the belief that outcomes--not just process and precedents--matter. . . . Third is the recognition that courts' coercive powers can change people's behavior. . . . Finally, . . . that courts can't carry out this problem-solving role alone. Collaborations with government agencies and community groups are essential.

*Id.* Under Chief Judge Kaye's administration, 164 drug courts are operating in New York State. *See*, Judith S. Kaye, State of the Judiciary 2006 (2006).

"New York State drug treatment courts are specialized court parts that give non-violent substance abusing offenders an opportunity to reduce or eliminate criminal sanctions if they are successful in completing treatment." N.Y. State Comm'n on Drugs and the Courts, Confronting

the Cycle of Addiction & Recidivism: A Report to Chief Judge Judith S. Kaye (2000), available at http:// www.nycourts.gov/reports/addictionrecidivism.shtm#16. Participants regularly report to court to have their progress monitored by the presiding judge. In addition, "drug courts generally have a staff of professionals who help to monitor offenders treatment and who serve as a link between the criminal justice system and treatment communities." *Id.*

Treatment may be either outpatient or residential or a combination of the two. Services are not limited to drug treatment. An offender may be provided educational opportunities, job training, basic health care or housing assistance. *See id.*

"In order to graduate from many drug court programs participants must not only have been drug-free for the period prescribed by the program . . . , but also must satisfy other requirements likely to encourage a drug-free lifestyle, such as having a job or obtaining a G.E.D. or vocational degree." *Id.* "If the offender succeeds in treatment and graduates from the program, the pending charges are reduced or dismissed. If the offender fails and is dismissed from the program, he or she is then prosecuted . . . and faces the full panoply of applicable criminal sanctions." *Id.*

The New York Program has reportedly achieved useful results. "The vast majority of Drug Courts in the state report one-year retention rates of over 60 percent, and many have one-year retention rates of over 70 percent. These figures vastly exceed the retention rate for substance abusers who enter treatment without the coercive 'stick' of the criminal justice system providing an incentive to complete treatment."*Id.*

The New York drug courts have also favorably affected recidivism rates. "Among graduates of Drug Court programs, the one-year rearrest rate reported by most of the Drug Courts

... is less than 15 percent. These numbers are far below the one-year recidivism rates of drug offenders on probation and drug offenders released from prison, which are generally about 34 to 35 percent."*Id.*

In short, New York's drug treatment courts have demonstrated significant success in helping offenders with substance abuse problems address the issues underlying their criminal behavior so they can turn their lives around.

## IV. Contrast between the Federal and the New York State Systems

In the United States District Court for the Eastern District of New York a drug court equivalent to the system in the New York State courts has not been adopted, although this district's Probation Services provides excellent anti-drug programs. The Eastern District of New York Probation Services Department operates a substance abuse prevention and an assessment re-entry group and works with various outside agencies to provide treatment. Services provided include outpatient treatment, inpatient detoxification, short term inpatient treatment, residential treatment and methadone maintenance. *See* United States Probation Department for the Eastern District of New York, Policy for Substance Abuse Treatment and Referral in the Eastern District of New York (2006).

Federal court's in other circuits have adopted programs modeled after New York's and other states'drug courts. In the United States District Court for the Western District of Michigan the court has created a two-year program, based upon the method used in Michigan state drug courts to help offenders re-enter the community under close supervision. The Western District of Michigan's program requires monthly hearings and awards quarterly certificates for progress toward goals. The offenders who participate in this program have access to substance abuse

programs and job placement agencies. After the first year participants no longer attend monthly hearings but remain on supervised release. If the candidate completes the second year successfully the reward is a recommendation for early discharge from supervision. *See* Federal Court Management Report, Re-entry Program Helps At-Risk Offenders (November 2006), available at http://jnet.ao.dcn/fcmr/November06/reentry/index.shtml.

A drug court program for the Eastern District of New York has been considered, but not yet adopted. "Drugs are a primary engine of crime and prison population growth" and "[a]ddiction is also a key factor in many violations of the conditions of supervised release." *See* Charles P. Sifton & Jack B. Weinstein, Report on Proposed Drug Court Program: Eastern District of New York (2005).

The federal probation system is under severe strain. Budgetary restrictions and the large number of cases handled have made it difficult even for our highly skilled Eastern District probationary staff to give full consideration to every case of a drug addicted defendant. In addition, as noted in Part II, A, *supra,* a mandatory term of imprisonment is sometimes required.

Federal burdens and lack of discretion make it desirable, in some cases, to allow the state to supervise defendants. *See* Part V, *infra.*

Federal courts have recognized that moderating changes in state criminal drug laws can have an ameliorative effect on harsh federal sentences. *See e.g. United States v. Archer,* 2006 WL 3332995 (S.D.N.Y. 2006) (holding that defendant's prior New York law convictions for attempted criminal sale of a controlled substance in the third degree did not constitute convictions for a serious drug offense under the Armed Career Criminal Act because New York's 2004 Drug Law Reform Act downgraded the prior offenses to less than "serious" offenses);

*United States v. Hammons,* 438 F. Supp. 2d 125 (E.D.N.Y. 2006) (holding that it is the state's present view of the seriousness of the offense that matters in determining whether defendant's prior state-court drug convictions were predicate "serious felony offenses" for purposes of the Armed Career Criminal Act ); *accord United States v Morton,* 17 F.3d 911 (6th Cir. 1994) (reversing a mandatory minimum sentence under the Armed Career Criminal Act because by the time the defendant was sentenced the state had reclassified one of its drug trafficking offenses from a Class B to a Class C felony); *Cf. Lopez v. Gonzalez,* 127 S.Ct. 625, 632 (Dec. 5, 2006) ("It may not be all that remarkable that federal consequences of state crimes will vary according to state severity classification . . . ").

In the area of sentencing, the combination of overlapping state and federal laws and limited federal resources exacerbate the disparity between state and federal sentences. "A ... criticism of the federalization of criminal law is that the possibility of so many crimes now being subject to both federal and state prosecution creates a large pool of defendants who could be tried in either court." Christine Demaso, Note, Advisory Sentencing and The Federalization of Crime: Should Federal Sentencing Judges Consider the Disparity Between State and Federal Sentences Under *Booker*?, 106 Columbia L. Rev. 2095, 2119 (2006) (hereinafter "Demaso").

Since the Supreme Court's decision in *United States v. Booker,* 542 U.S. 220 (2005), made the federal sentencing guidelines largely advisory, the issue of whether it is appropriate for federal sentencing judges to consider the disparity between state and federal sentences becomes critical in some cases. It has been suggested that consideration during sentencing of "the disparity between state and federal sentences... [would] help alleviate both the disparity [between state and federal sentences] and the concern that the federal courts are overwhelmed with matters that can

10

and should be tried in the states." Demaso at 2128.

Federal courts are recognizing post-*Booker* that it maybe appropriate to take state sentencing practices into account when sentencing federal defendants. *See, e.g., United States v. Wilkerson*, 411 F.3d 1 (1st Cir. 2005) (remanding case for further sentencing proceedings based on indication that the district judge might have given a different sentence under an advisory guidelines regime, where district judge expressed concern about disparate state and federal sentences in similar cases but stated that the guidelines did not permit him to take that disparity into account.); *United States v. Clark*, 434 F.3d 684, 687-88 (4th Cir. 2006) ("[T]he consideration of state sentencing practices [by federal sentencing judges] is not necessarily impermissible per se.").

Federal legislation recognizes the desirability of avoiding sentencing disparity. Section 3553 (a)(6) of title 18 of the United States Code requires:

> The court, in determining the particular sentence to be imposed, shall consider –...
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

The disparity referred to has usually been interpreted to apply horizontally to comparisons among federal defendants. *See generally,* Jack B Weinstein and Christopher Wimmer, *Sentencing in the United States*, Part II. D. 2., Regional Variation, *in* Current Trends in Criminal Procedure and Evidence: A Collection of Essays in Honor of Prof. Eliahu Harnon, (Anat Horovitz and Mordechai Kremnitzer eds., 2007) (Forthcoming) (hereinafter *U.S. Sentencing*). Yet, section 3553 (a)(6) can also be interpreted to require consideration of vertical disparities between local state and federal sentences. *Id.* Criminal law and sentences in the past and today have been crafted by the states not the federal government; federal sentences have had little

11

impact on most crimes. *See* Demaso, at fn.76; *U.S. Sentencing,* Part II. D. 2. ("Until the mid-1980s, federal judges were accorded the discretion to respond to local conditions, permitting consistency in a geographic area between the overlapping state and federal systems. When the Act that created the federal Guidelines was drafted, a number of legislators disregarded this history and insisted on national uniformity in federal sentencing. Although this effort was partially successful on its own terms—"unwarranted disparity," as defined by the Commission, was reduced—it created tensions in districts that attempted to deal with the special needs of the communities in which they operated.") (footnotes omitted); U.S.S.C, *Final Report on the Impact of United States v. Booker on Federal Sentencing,*111-112 (March 2006) (under Guidelines, regional variations in sentencing for drug trafficking cases remained high; "It has also been argued that departure can be used to ameliorate the unwarranted disparity that can arise when some offenders are prosecuted in federal court while others are prosecuted in state court where sentences are more lenient.").

From the point of view of the impact of sentencing on specific and general deterrence and on reducing recidivism rates, state- vertical coordination is more important than national-horizontal uniformity. The public and criminals generally consider the local federal and state courts as part of a single protective institution. Too great a disparity between state and federal prosecution and sentencing decisions will be seen by the public as creating unjustified disparities.

Section 3553 (a)(6) should be construed as covering disparities in state-federal as well as federal-federal comparative sentencing. *See* Demaso, at fn.132; *U.S. Sentencing,* Part II. D. 2; *But see* Demaso, at p. 2112 (federal courts pre- *Booker* refused to consider state disparity).

Considering comparable state sentences in formulating federal sentences will generally

tend to reduce average time in prison. Federal sentences are generally higher than state sentences. *See* Demaso, at fn. 80-82. This development may also moderate the power of prosecutors to whipsaw defendants -- federal prosecutors intervening in state matters, and state prosecutors threatening deferral to federal prosecutions with the prospect of higher sentences. *See* Demaso, at pp. 2105-2107.

## V.     Appropriate Disposition: Deferring to the State

Given the difference between the Federal and the New York State systems with regard to the assistance available to some offenders with substance abuse problems, the fact that the defendant has completed a detoxification program and is willing to be monitored in a state drug treatment program, family considerations, and the likelihood of more effective treatment out of as compared to in prison, justice would be better served within the state system.

In an attempt to assist the defendant and his family, without endangering the public, the court should allow the defendant's present state drug possession charges to go forward in the state rather than the federal system.

## VI.    Conclusion

The violation of supervision charges are adjourned until November 13, 2007. The state system may take control of the defendant pursuant to pending state charges. Defendant's supervised release under the federal system is extended and suspended for the duration of this adjournment.

SO ORDERED.

Jack B. Weinstein

Dated: January 2, 2007
       Brooklyn, New York